❒ Original      ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with | )    Case No.    20-1041M(NJ) |
| Broadwayconstructionwi@gmail.com that is | ) |
| stored at premises controlled by Google LLC | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

See attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   October 21, 2020    *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph    .

*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for _____ days *(not to exceed 30)*    ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10/7/20 @ 12:44 p.m.            *Judge's signature*

City and state:    Milwaukee, WI            Honorable Nancy Joseph

*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with broadwayconstructionwi@gmail.com that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.       Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) March 19, 2020, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.       The contents of all emails associated with the account July 17, 2018, to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.       All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.       The types of service utilized;

d.       All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

2

e.       All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within **one month** of issuance of this warrant.

Case 2:20-mj-01041-NJ   Filed 10/07/20   Page 5 of 25   Document 1

## II.  Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1957, 18 U.S.C. § 1343, 18 U.S.C. § 287, and 18 U.S.C. § 371, those violations involving Richard Platt and Nicole Platt and occurring after July 17, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  Conspiracy to engage in government contract set-aside fraud and money laundering of the proceeds of the fraud;

(b)  Government Contracting fraud committed by Richard Platt, Nicole Platt, Platt Construction, and Broadway Construction;

(c)  False statements to the federal government in relation to government contracting;

(d)  Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e)  Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(f)  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(g)  The identity of the person(s) who communicated with the user ID about matters relating to government contracts, including records that help reveal their whereabouts.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Information associated with<br>Broadwayconstructionwi@gmail.com that is stored at<br>premises controlled by Google LLC | )<br>)<br>)<br>)<br>)<br>)  Case No.<br>2□-2□41M (NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC Sections 1957, 1343, 287 and 371 | See attached affidavit |

The application is based on these facts:

See attached affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph Osborne, SA, USA GSA OIG

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 1□/7/2□2□

*Judge's signature*

City and state: Milwaukee, WI.

Honorable Nancy Joseph

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH BROADWAYCONSTRUCTIONWI@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Joseph Osborne, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google LLC (Google), an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.    I am a Special Agent with the United States General Services Administration (GSA), Office of Inspector General (GSA OIG), in Chicago, IL, and have been since April 2016. As a Special Agent with GSA OIG, my duties and responsibilities include the investigation of all federal criminal statutes and violations of law when that violation pertains to GSA programs and operations. I have received extensive training in conducting complex fraud investigations

involving Government contractors and methods they use to defraud the Government. The facts in this affidavit come from my personal observations, my training and experience, my review of records, and my communications with other law enforcement officers.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1957 (Money Laundering), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 287 (Filing a False Claim), and 18 U.S.C. § 371 (Conspiracy to Commit Defraud the United States) have been committed by Richard Platt ("R. Platt"), Nicole Platt ("N. Platt"), and potentially other persons, known and unknown.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      I am currently assigned to investigate an alleged violation of federal laws involving the use of a pass-through company to obtain government contracts under a Historically Underutilized Business Zone (HUBZone) status-based, set-aside program. The following describes how a pass-through scheme works: A HUBZone is established by a person who does not meet the requirements needed to qualify for HUBZone set-aside or sole source contracts. Once

2

such a contract is awarded to the entity that fraudulently obtained authorization to win HUBZone contract, this straw company, "passes" the work through to the non-HUBZone entity that is ineligible to obtain the contract. Specifically, the matter under investigation involves an allegation that Broadway Construction, LLC ("Broadway"), a company located in Milwaukee, WI, that is eligible to win HUBZone contracts, was established to be a pass-through company used by the non-HUBZone Platt Construction, Inc. ("Platt Construction"), located in Franklin, WI, to obtain HUBZone set-aside contracts. Broadway obtained their HUBZone certification fraudulently. If the SBA had been notified that Platt Construction would be performing the work and receiving the profits for HUBZone contracts awarded to Broadway, they would not have approved Broadway's HUBZone application.

7.      Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of federal law have been committed that caused the Department of Defense (DoD) to award four HUBZone set-side contracts, with a combined value of approximately $3.5 million, to Broadway, which fraudulently obtained its HUBZone certification. These violations have occurred since 2019 and are ongoing as Broadway is currently working on previously awarded HUBZone set-aside contracts and bidding on proposed HUBZone set-aside contracts. These violations were committed by R. Platt, the President and majority shareholder of Platt Construction, and N. Platt, the President and majority shareholder of Broadway.

Background on HUBZone Set-Aside Contracts

8.      The HUBZone program was established by 15 U.S.C. § 657a to encourage small businesses located in designated high-unemployment, low-income areas through set-aside federal contracts.   A company can apply for HUBZone certification when the company complies with the

3

HUBZone program's requirements including that the firm must be a small business based on reported North American Industry Classification System (NAICS) codes and reported income, including affiliated businesses; owned and controlled 51% by United States citizens; have the company's main office in a HUBZone; and have at least 35% of its employees living in a HUBZone. SBA regulates and implements the program. SBA determines which businesses are eligible to receive HUBZone contracts and maintains a listing of qualified HUBZone small businesses. To make sure HUBZone firms are following the requirements of the program, the SBA HUBZone headquarters will periodically direct the district offices to verify current HUBZone certification.

Richard Platt

9.     R. Platt became the owner of Platt Construction in 1980. Since then, Platt Construction has participated in federal contract set-aside programs to include the Veterans Affairs Service-Disabled Veteran-Owned Small Business Program, the Department of Transportation's Disadvantaged Business Enterprise Program, and the Small Business Administration's (SBA) 8(a) Business Development Program.

Nicole Platt

10.     N. Platt has a background in dance and theater. She became an employee of Platt Construction in 2015, first as a secretary, and then as Vice President of Administration. Platt Construction maintains a website at www.plattcon.net. A review of the website on April 24, 2020, lists Nikki Platt under the Contact Us tab.

11.     N. Platt's income as reported in IRS forms submitted to the Wisconsin Unified Certification Program (WUCE) was $32,381 in 2015, $59,276 in 2016, and $75,192 in 2017.

4

Nicole's income from Platt Construction as reported to the Wisconsin Department of Workforce Development (WDWD) is listed below.

| Year | Amount |
|------|--------|
| 2015 | $32,381 |
| 2016 | $48,690 |
| 2017 | $68,507 |
| 2018 | $74,177 |
| 2019 | $88,580 |

Broadway Construction

12.     Wisconsin Department of Financial Institutions (WDFI) records show that N. Platt registered Broadway on August 7, 2017. N. Platt is the only individual listed in all WDFI filings. In Broadway's 2019 annual report filed on September 19, 2019, N. Platt provided her email address as broadwayconstructionwi@gmail.com ("Target Account").

13.     Financial records show that N. Platt started Broadway with $500 in capital. Statements submitted to WUCE indicate Broadway does not have any loans or security agreements.

14.     WDWD records show that Broadway has one employee by the name of Beth Hastings ("Hastings"). Hastings began working for Broadway in 2019. Hastings has also been an employee of Platt Construction since at least 2006. Bank records and communications submitted to DoD show that Broadway has two additional employees: Odessa Millan ("Millan") and Mary Ambro ("Ambro"). Millan has also been an employee of Platt Construction since 2019. Ambro has also been an employee of Platt Construction since 2015. No field or labor workers have been identified for Broadway.

5

15. Statements submitted to WUCE indicate Broadway does not have any equipment or vehicles. Surveillance conducted on N. Platt on August 19, 2020, at her residence showed she drives a vehicle registered to Platt Construction.

16. Broadway is currently certified by the SBA as a business eligible to bid on set-aside contracts under the HUBZone program. N. Platt made false representations and material omissions to the SBA during the application process in order to qualify as a small business, as further referenced below.

N. Platt applied for the HUBZone program on March 29, 2019. In the application, N. Platt certified that she was the managing member of Broadway, that Broadway's principal office was located in a HUBZone, and that at least 35% of the employees reside in a HUBZone. However, only one out of the four employees, Hastings, lives in a HUBZone. The certification was approved on July 16, 2019. The application and supporting documentation was emailed to SBA by the Target Account. The email included four documents with N. Platt's signature and also included a copy of N. Platt's U.S. passport, Social Security card, and Wisconsin driver's license.

N. Platt also submitted a statement with her HUBZone application indicating that she worked at Broadway 30 plus hours a week, Hastings worked at Broadway 10 hours per week, and that the office is staffed Monday through Friday from 7:30 a.m. to 4:00 p.m. by N. Platt and/or Hastings. The office was unstaffed during surveillance conducted on June 16, 2020, from 8:25 a.m. to 8:45 a.m.; August 19, 2020, at 10 a.m. and 12:40 p.m.; August 27, 2020, at 7 a.m. and 10:20 a.m.; and September 1, 2020, at 10:20 a.m.

6

<u>Broadway's Government Contracts</u>

17.     Broadway was awarded four HUBZone set-aside contracts between 2019 and 2020 valued at approximately $3.5 million from the Department of the Army for HVAC, bridge, generator, and fence repairs, and other work to be determined. Department of the Army contracting officials primarily relied on Broadway's self-certification submissions to the SBA to determine eligibility to bid upon and receive HUBzone contracts.

18.     Broadway listed Platt Construction as a subcontractor on two projects. Surveillance conducted on July 27, 2020; August 13, 2020; and August 24, 2020 on one project revealed that Platt Construction vehicles and employees were present on the job.

<u>Affiliation</u>

19.     13 C.F.R. § 121.103 states concerns or entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties control or has the power to control both.

20.     13 C.F.R. § 121.103(f) states that individuals or firms that have identical (or substantially identical) business or economic interests may be treated as one party unless they can demonstrate otherwise. Family members, persons with common investments, or firms that are economically dependent through contractual (or other) relationships, are among those treated this way.

21.     13 C.F.R. § 121.103(h)(4) states a prime contractor and its subcontractor may be found affiliated if the subcontractor is determined to be an "ostensible subcontractor." An "ostensible subcontractor" is a subcontractor that performs the primary and vital requirements of a contract, or of an order under multiple award schedule contract or the prime contractor is unusually reliant on the subcontractor.

7

22.     Since N. Platt does not have experience in managing construction projects, Broadway does not have any construction employees according to WDWD, and Broadway does not have any vehicles or equipment, Broadway depends on Platt Construction in order to carry out construction contracts. Broadway unduly relies on Platt Construction. N. Platt also failed to disclose Broadway's affiliation with Platt Construction to SBA.

<u>Broadway Records in Government Databases</u>

23.     Any business seeking a contract or purchase agreement with the federal government must first register online in the System for Award Management ("SAM"), a government-operated database.  This database is under the authority of GSA.  The business enters its core data such as business name, Data Universal Numbering System number, address, owner(s), bank account information, contacts, NAICS codes, and any assertions of status-based business classification(s). The business must self-certify that it meets the specific requirements related to their status-based assertions annually or any time there is a substantive change in the accuracy of previous certifications.  Each status-based business classification is fully defined with references and hyperlinks to the laws that govern the programs.  Contracting officials for government agencies rely upon these certifications prior to awarding set-aside contracts.

24.     N. Platt provided the Target account as the email address for Broadway when she registered on SAM.  N. Platt is the only registered user for Broadway on SAM. Therefore, the user that certified for Broadway in SAM was N. Platt.

25.     N. Platt made seven certifications from July 17, 2018, through January 3, 2020, for Broadway on SAM. In the certifications, N. Platt certified that Broadway was a Woman-Owned Small Business, an Economically-Disadvantaged Woman-Owned Small Business, and/or

8

HUBZone certified. These certifications are false because Broadway is actually controlled by N. Platt's father, R. Platt, who is a man.

26.     The SAM database is located in Sterling, VA, and Broadway operates out of Wisconsin. One certification was made from Internet Protocol (IP) address 12.167.12.162 and four certifications were made from IP address 71.66.11.90. Platt Construction also had SAM certifications from these IP addresses.  According to the Internet Service Provider, IP address 71.66.11.90 is a static IP address issued to Platt Construction at their business address since March 4, 2019. Therefore, the SAM certifications from this IP address would have to be from a computer at Platt Construction.

27.     Fedbizopps.gov ("FBO") was the legacy system for federal agencies to post contracting opportunities. In 2019, FBO was moved to beta.sam.gov. IP records for FBO show that a user for both Broadway and Platt Construction logged on from IP address 71.66.11.90, issued to Platt Construction at their business address. Platt Construction had logins from this IP address from March 8, 2019, through October 31, 2019. Broadway had logins from this IP address from July 22, 2019, through August 6, 2019.

28.     When Broadway was initially registered in SAM, the address listed was N. Platt's home address of 1002 N. Jackson St., Milwaukee, WI.  This location is not in a HUBZone. On, March 22, 2019, the address for Broadway was changed to 1812 E. North Ave, Milwaukee, WI, a location in a HUBZone. This address did not appear to be a business location for Broadway; rather, it has been the location of a barber shop since October 17, 2018. Broadway's lease at this location states it was for 200 square feet of office space. On October 22, 2019, the address for Broadway was changed to 1932 E. Park Pl., Milwaukee, WI, a location in a HUBZone.

9

<u>Financial Records</u>

29.      Financial records in Broadway's business account at Park Bank from 2017-2020 indicate R. Platt was using Broadway as a pass-through for construction projects. According to those records, Broadway received funds from various companies/individuals and shortly after passed the money to Platt Construction in the form of a check for a similar amount. Broadway also received large sums of money from Platt Construction and shortly after issued a check to other companies for a similar amount. Additionally, Broadway received large sums of money from the U.S. Treasury and shortly after passed the money to Platt Construction and other companies in the form of a check.

For example, on July 23, 2018, RLP Diversified, Inc. issued a check for $16,327.54 to Broadway at Platt Construction's address with memo "Invoice # 180611-1." On July 31, 2018, Broadway issued a check for $15,530.76 to Platt Construction with memo "Inv. 180611-1."

On July 15, 2019, Platt Construction issued a check for $162,653.93 to Broadway. On July 16, 2019, Broadway issued a check for $147,886.45 to Concrete & Masonry Restoration LLC.

On January 16, 2020, the U.S. Treasury wired $47,984.88 to Broadway. On January 21, 2020, Broadway issued two checks totaling $29,628 to Platt Construction.

As of May 20, 2020, Broadway had received $460,566.91 from the U.S. Treasury.

30.      Due to these violations of federal law, there is probable cause to believe R. Platt, with assistance from N. Platt and other individuals, has financially benefited from the receipt of HUBZone set-aside contracts valued at approximately $3.5 million.

31.      A preservation request was sent to Google on March 19, 2020, and renewed on June 16, 2020, and on September 14, 2020. In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google servers until the subscriber deletes the email. If

10

the subscriber does not delete the message, the message can remain on Google servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

32.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public.  Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A.  Subscribers obtain an account by registering with Google.  During the registration process, Google asks subscribers to provide basic personal information.  Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

33.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even

11

if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

34. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

35. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

36. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or

12

alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## <u>CONCLUSION</u>

37. Based on the forgoing, I request that the Court issue the proposed search warrant.

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by

13

serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

### REQUEST FOR SEALING

39.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with broadwayconstructionwi@gmail.com that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) March 19, 2020, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account July 17, 2018, to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

2

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within **one month** of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1957, 18 U.S.C. § 1343, 18 U.S.C. § 287, and 18 U.S.C. § 371, those violations involving Richard Platt and Nicole Platt and occurring after July 17, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  Conspiracy to engage in government contract set-aside fraud and money laundering of the proceeds of the fraud;

(b)  Government Contracting fraud committed by Richard Platt, Nicole Platt, Platt Construction, and Broadway Construction;

(c)  False statements to the federal government in relation to government contracting;

(d)  Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e)  Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(f)  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(g)  The identity of the person(s) who communicated with the user ID about matters relating to government contracts, including records that help reveal their whereabouts.

4